MELISSA HOLYOAK, United States Attorney (#9832)
HEATHER WAITE-GROVER, Special Assistant United States Attorney (#10991)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Tel: 385-395-8819
Fax: 801-524-4366
Email: heathergrover@agutah.gov

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF: CELLULAR DEVICE(S), DESCRIBED AS FOLLOWS: BLACK APPLE IPHONE (TARGET DEVICE) BELONGING TO EDGAR ADRIAN SANCHEZ.** | Case No. 2:26mj708 JCB |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Jordan Pisano being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic devices that were in the possession of Edgar Adrian SANCHEZ (described more fully herein and in attachment A), the data extraction from those electronic devices and the forensic analysis of that electronic data as described in Attachment B.

2. I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA") and have been since April, 2022. I am currently assigned to Task Force Enforcement Group 3 in the DEA Salt Lake City District Office (SLCDO). I have prior law enforcement experience where I worked as a uniform officer with the United States Capitol Police from 2019-2021. I continue to enhance my knowledge of law enforcement principles and practices through training. I have attended multiple drug interdiction trainings, which have focused on identifying behavior indicative of drug trafficking and distribution. I have conducted and assisted with numerous investigations relating to the possession and distribution of illegal narcotics (both State and Federal) during my career.

3. During the course of my employment as a DEA Special Agent, I have participated in drug investigations which involved the use of Title-III interceptions, undercover agents, confidential informants, cooperating witnesses, physical surveillance, consensual recordings, drug evidence purchases, toll record analysis, and subject interviews. Through such investigations and training, I have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise illegal drugs and the dealings associated with such activities. I have participated in serving search warrants and surveillance operations. I have also participated in investigating drug operations involving large amounts of narcotics that are associated with violent drug cartels. I am familiar with the ways in which narcotic traffickers conduct their business, including, but not

limited to, their methods of importing and distributing controlled substances, their use of mobile telephones, and their use of code words to conduct transactions.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant for the **Black Apple iPhone ("TARGET DEVICE")** and does not set forth all of my knowledge about this matter. This application seeks authority to search **TARGET DEVICE** for evidence, fruits, and instrumentalities of crimes against the United States, specifically, the importation, possession and distribution of a controlled substance in violation of Title 21, United States Code, Section 841.

5. Furthermore, you affiant knows that with the technological advances in society today, narcotics distributors utilize electronic equipment such as cellular telephones and computers to further facilitate their illicit transactions

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

6. The property to be searched consists of the following:

A Black Apple iPhone, hereinafter referred to as **TARGET DEVICE**. When retrieving and attempting to search **TARGET DEVICE**, agents will be able to locate its device by its description above. The **TARGET DEVICE** has been assigned non-drug evidence number during the investigation of the case and stored with the non-drug evidence number. The **TARGET DEVICE** was the only electronic device seized during the investigation.

The Black Apple iPhone has been stored in airplane mode in a secure evidence locker since it was seized. The **TARGET DEVICE** is further described in Attachment A, attached hereto and incorporated herein.

7. It is believed that within **TARGET DEVICE** there is presently concealed information which constitutes evidence of violations of 21 USC 841(a)(1), Possession with the Intent to Distribute a Controlled Substance; 21 USC 841(a)(1) and 846, Conspiracy to Distribute a Controlled Substance, and 21 USC 843(b), Unlawful Use of a Communications Facility. The applied-for warrant would authorize the forensic examination of **TARGET DEVICE** for the purpose of identifying electronically stored evidentiary data particularly described in Attachment B, attached hereto and incorporated herein.

## PROBABLE CAUSE

8. On or about the week of August 3, 2026, agents conducted a buy/bust operation resulting in the seizure of approximately 5,658 grams of "M-30" stamped fentanyl pills. Agents transported the fentanyl pills to the Salt Lake City District Office (SLCDO) where they field tested positive for the presence of fentanyl. Agents processed the fentanyl pills as evidence and relinquished the fentanyl pills to the Forensic Laboratory for safekeeping and further chemical analysis. Lab analysis is still pending.

9. During the month of August, agents procured a Source of Information ("SOI") cooperating with law enforcement. While communicating with SOI, SOI told agents that an unknown male (UM) was expected to pick up approximately 40,000 fentanyl pills. SOI provided

agents with the telephone number (385-485-7408) associated with the local courier who would pick up the 40,000 fentanyl pills.

10. On August 24, 2026, TFO Atkin, acting in an undercover (UC) capacity, contacted telephone number 385-485-7408. TFO Atkin coordinated with the user of 385-485-7408 (hereafter referred to as UM7408) to pick up the 40,000 fentanyl pills. TFO Atkin asked UM7408 if he was ready to pick up the "stuff" and UM7408 advised that he was ready. TFO Atkin told UM7408 that he could meet UM7408 at the Valley Fair Mall to complete the transaction. UM7408 agreed to meet at the Valley Fair Mall and told TFO Atkin he was on his way.

11. Agents maintained surveillance at the Valley Fair Mall prior to UM7408 arriving. SA Pisano prepared counterfeit/sham fentanyl pills inside a white bucket. The counterfeit/sham fentanyl pills weighed in excess of 400 grams. SA Pisano placed the counterfeit/sham pills near a green electrical box at the SpringHill Suites at the Valley Fair Mall. TFO Atkin shared a picture of the counterfeit pills within the white bucket to UM7408. TFO Atkin also shared a GPS pin drop location to UM7408. UM7408 told TFO Atkin that he was at the Valley Fair Mall in a red sedan near the Panda Express.

12. Shortly after, SA Enoch Smith observed a red Honda Accord near the Panda Express. SA Smith observed the red Honda Accord leave the vicinity of the Panda Express and drive toward the GPS pin drop. SA Pisano observed the red Honda Accord arrive in the parking lot of the SpringHill Suites. Once inside the parking lot, TFO Butler observed the red Honda

Accord park. TFO Butler observed a Hispanic male, wearing a blue long sleeve shirt exit the driver seat of the red Honda Accord and walk towards the green electrical box. The Hispanic male was the only occupant of the red Honda Accord. TFO Butler then observed the Hispanic male pick up the white bucket containing counterfeit fentanyl pills and begin to walk back towards the red Honda Accord.

13. Soon after, agents turned on their red/blue emergency police lights and detained the Hispanic male who was later identified as Edgar Adrian SANCHEZ. Once detained, SANCHEZ verbally agreed to law enforcement searching his cellphone (**TARGET DEVICE**). Agents located the contact card for SANCHEZ, and it displayed the same telephone number (385-485-7408) that was communicating with TFO Atkin. Agents seized the **TARGET DEVICE**, placed it into airplane mode, and transported **TARGET DEVICE** to the SLCDO for evidence storage.

**BACKGROUND REGARDING DRUG TRAFFICKING/MONEY LAUNDERING**

14. Based upon my training and experience, and conversations with, and training from, other officers and agents involved in narcotics and money laundering investigations, I know the following:

15. Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value. These items are generally kept in locations where drug

traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes or stored in vehicles.

16. Traffickers of controlled substances commonly maintain addresses, vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization and it is common to find drug traffickers keeping records of said associates in cellular telephones and other electronic devices. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing illegal drug distribution business. Traffickers frequently change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

17. Traffickers maintain evidence of their criminal activity at locations that are convenient to them, such as their residences and inside their vehicles. This evidence often includes more than contraband and paraphernalia, and includes financial records, records of property and vehicle ownership, records of property rented, records of post office boxes used to ship and receive contraband and currency, records of storage facilities used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes. Illegal drug traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product, or have photo or video security systems that record images from their homes or property. These individuals

usually maintain these photographs and recordings in their possession, at their premises, or at some other safe place.

18. Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order to maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money or might owe someone else money. These records are often created in code.

19. Drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that landlines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular

telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This data includes the following:

20. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

21. The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or meeting. Even if a contact involves a telephone user not part of

the conspiracy, the information is helpful because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a suspect's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

22. Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates and friends of the user who likely have helpful information about the user, his location, and his activities.

23. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own pictures, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have "geocode" information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

24. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

**TECHNICAL TERMS**

25. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. The "devices" or "subject devices" (Wireless telephone): A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

26. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I know that **TARGET DEVICE** has capabilities that allow them to serve as a wireless telephone, text messaging, address book, daily calendar of events, and a digital camera. Additionally, in my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

28. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is

not present on a storage medium.

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **TARGET DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

31. I submit that there is probable cause to believe that SANCHEZ is involved in the distribution of drugs and that there is probable cause to believe that within the cellular phone that was in his possession (**TARGET DEVICE**), there is presently concealed information which constitute evidence of violations of 21 USC § 841(a)(1), Possession with the Intent to Distribute a Controlled Substance; 21 USC §§ 841(a)(1) and 846, Conspiracy to Distribute a Controlled Substance, and 21 USC § 843(b), Unlawful Use of a Communications Facility. Specifically, I

////

////

////

believe that information in **TARGET DEVICE** may relate to SANCHEZ's drug trafficking activities.

Respectfully submitted,

*/s/ Jordan R. Pisano*
Jordan R. Pisano
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on 27th day of August, 2026

JARED C. BENNETT
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

*/s/ Heather Waite Grover*
Heather Waite Grover
Special Assistant United States Attorney

## ATTACHMENT A—THE DEVICES TO BE SEARCHED

The property to be searched consists of the following:

A black Apple iPhone (**TARGET DEVICE**) with a listed DEA Non-Drug Evidence Evidence Number N-136. **TARGET DEVICE** is stored in a secure evidence locker on airplane mode. When retrieving and attempting to search **TARGET DEVICE**, agents will be able to identify each unique device by its description above, including by its non-drug evidence number since each non-drug evidence number has been assigned to one device seized in this investigation.

1. It is believed that within **TARGET DEVICE** that there is presently concealed information which constitutes evidence of violations of 21 USC 841(a)(1), Possession with the Intent to Distribute a Controlled Substance; 21 USC 841(a)(1) and 846, Conspiracy to Distribute a Controlled Substance. The applied-for warrant would authorize the forensic examination of **TARGET DEVICE** for the purpose of identifying electronically stored evidentiary data particularly described in Attachment B.

**ATTACHMENT B**
**THE INFORMATION TO BE SEIZED**

1. All records on **TARGET DEVICE** described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 843(b), and 21 U.S.C. § 846 including:

a. lists of contacts and related identifying information;

b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

d. electronically stored documents or data indicating travel or the movement of controlled substances in interstate and foreign commerce;

e. financial profits, proceeds and instrumentalities of trafficking in narcotics and money laundering, cryptocurrencies including bitcoin and other items of value;

f. all bank records, checks, credit card bills, account information, and other financial records, or other records indicating attribution;

g. all recordings both audio and visual indicating possession, storage, or trafficking of controlled substances (to include exit data associated with visual recordings which can provide evidentiary dates and locations associated with the recordings);

h. All communications related to drug trafficking, including but not limited to text or media messages, instant messaging, or messaging applications utilizing the Internet.

2. Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. Records evidencing the use of the Internet including:

a. records of Internet Protocol addresses used;

b. records of Internet/dark web/dark net activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses associated with the distribution of controlled substances or the conspiracy to distribute controlled substances

4. Any other fruits or instrumentalities of the crimes of Possession with Intent to Distribute a Controlled Substance, Conspiracy to Distribute a Controlled Substance, and Unlawful Use of a Communications Facility.